UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

ANDRE JONES,

         Petitioner,

  - versus -

ADA PEREZ, Warden,

         Respondent.

MEMORANDUM
AND ORDER
14-CV-3971 (JG)

A P P E A R A N C E S:

  ANDRE JONES
    09A4947
    Downstate Correctional Facility
    121 Red Schoolhouse Road
    Fishkill, New York 12524
  By: *Petitioner, pro se*

  RICHARD A. BROWN
    District Attorney, Queens County
    124-01 Queens Boulevard
    Kew Garden, New York 11415
  By: John M. Castellano
    Merri Turk Lasky
    *Attorneys for Respondent*

JOHN GLEESON, United States District Judge:

    Andre Jones petitions under 28 U.S.C. § 2254 for a writ of habeas corpus. Jones is presently incarcerated pursuant to a New York state criminal conviction and sentence of 20 years (to be followed by a five-year term of post-release supervision) following a jury verdict of guilty of Manslaughter in the First Degree (N.Y. Penal Law § 125.20(1)) and Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.01(1)).[1] I heard argument

---

[1] Jones's original prison sentence of 25 years plus 5 years of post-release supervision on the manslaughter charge was reduced on appeal to 20 years. *See People v. Jones*, 97 A.D.3d 696 (2d Dep't. 2012).

on the motion on December 12, 2014. For the reasons given below, the petition is denied and no certificate of appealability shall issue.

## BACKGROUND

A.  *Proceedings in the Trial Court*

Andre Jones was charged in Queens County with one count of Murder in the Second Degree (N.Y. Penal Law § 125.25 (1)) and one count of Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.01(1)). DE 8, ¶ 6.[2] The charges arose from events on March 24, 2007 inside the apartment of Latrice Goodwine at 91-56 195th Street, Jamaica, Queens, where Jones stabbed Jackie Halsey through the heart, killing him, after he and Halsey had an argument during an evening of drinking and marijuana smoking. Brown Aff., ¶ 4.

Jones fled to South Carolina and was arrested a month later with Jantay Brackat. At the time of his arrest, he made written and recorded statements in which he admitted his involvement in the crime, though he denied remembering the incident or having any intent to harm Halsey, who was his friend. *See* TT 701-02. The videotaped and written statements were admitted into evidence at trial, and the written statement was read aloud to the jury. *Id.* at 692, 695-701.

At a pretrial hearing on May 18, 2009, Jones's counsel stated that he had served notice of his intention to offer a defense of extreme emotional disturbance the week before. HT 3. Counsel also stated that he had submitted an application to the court to retain an expert psychologist, but the application had been denied. *Id.* at 3. Counsel argued that Jones had himself been the victim of a stabbing just a few days earlier in Brooklyn, and that Jones had

---

[2] Citations in the form "DE __" are to the documents contained in the case file; "DE" refers to the number of the docket entry for the cited documents. "TT __" is used to refer to the pages of the trial transcript; "HT" is used to refer to the transcript of the pretrial proceeding held on May 18, 2009; and "ST __ refers to the transcript of the sentencing, which occurred on September 23, 2009. The transcripts of these proceedings are attached as exhibits to DE 11 and DE 12

2

testified at the suppression hearing that he had fled the apartment after the stabbing of Halsey due to his fear of the gang that had stabbed him in Brooklyn. Counsel had spoken with a psychologist, who could not determine whether Jones had been suffering from post-traumatic stress as a result of his stabbing without speaking to Jones. The judge stated the Brooklyn event was too remote to have had an effect on Jones's later crime. *Id.* at 4-6. Unlike matrimonial or domestic disputes, which can have a relevant "nexus" to a charged shooting, the court stated, "Here gang members weren't in his house" at the time Halsey was stabbed. *Id.* at 6. The court further stated that the "timeliness [of the motion] is another problem," as it was coming "at the eleventh hour." *Id.* at 8. The application was not explicitly denied because the prospect of a plea bargain was raised at the hearing, but the court never granted the application to retain the expert.

At trial, a prosecution witness, Latrice Goodwine, testified that she had not seen Jones with anything in his hand on the night of the murder. TT 616. The court, pursuant to New York C.P.L. § 60.35, allowed the prosecutor to impeach Goodwine with her own earlier written statement to the police and her grand jury testimony. *See id.* at 616-19. The contents of the prior statements – that Goodwine had seen Jones with a knife – were disclosed to the jury during the exchange. *Id.* at 618. Two other eyewitnesses, Jantay Brackat and Lasandra Russell, testified that they saw Jones stab Halsey. *Id.* at 475, 792-93.

The trial court denied Jones's renewed applications for bus fare for a witness and a subpoena for police photographs. *Id.* at 393; HT 5. The court also precluded testimony that a razor was found in Halsey's throat during the autopsy. TT 840-43.

The jury found Jones not guilty of intentional murder but guilty of Manslaughter in the First Degree and Criminal Possession of a Weapon in the Second Degree. On September 23, 2009, the court sentenced Jones to twenty-five years' imprisonment plus five years of post-

3

release supervision on the manslaughter charge, and a concurrent indeterminate term of two to six years on the weapon count. ST 30-32.

B.   *The Direct Appeal*

Jones, represented by counsel, appealed to the Appellate Division, Second Department, raising four claims: (1) the trial court abused its discretion when ruling on his *Sandoval* motion[3] to exclude prior convictions; (2) he was deprived of a fair trial when the prosecution impeached its own witness, Latrice Goodwine, with her prior inconsistent statement; (3) he was deprived of his right to present a defense when the trial court (i) refused to sign a subpoena for police records and photographs that could have helped establish his physical inability to carry out the stabbing, (ii) refused to authorize a disbursement for a witness who could have testified as to Jones's physical condition on the day before the crime, and (iii) precluded evidence that a razor had been found in Halsey's mouth by the medical examiner; and (4) his sentence was excessive. In a *pro se* supplemental brief, Jones raised the following additional claims: (5) he was denied the effective assistance of counsel because his attorney (i) failed to file a timely motion for authorization to retain a medical expert, and (ii) failed to conduct an adequate investigation to pursue a defense of extreme emotional disturbance; (6) the state had failed to comply with the notice requirement of C.P.L. § 710.30; (7) the trial court erred in failing to conduct a *Dunaway* hearing[4] after he was granted such a hearing; and (8) his warrantless arrest was illegal.

---

[3]   In a *Sandoval* hearing, *People v. Sandoval*, 34 N.Y.2d 371 (1974), the trial judge makes a determination as to whether any prior convictions or specific uncharged crimes or bad acts may be used to impeach a testifying defendant.

[4]   A *Dunaway* hearing is held to determine whether a statement or other intangible evidence obtained from a person arrested without probable cause should be suppressed at a subsequent trial. *See Dunaway v. New York,* 442 U.S. 200 (1979).

4

On July 11, 2012, the Second Department modified the judgment by reducing the manslaughter sentence to twenty years, and affirmed the judgment as modified. *People v. Jones*, 97 A.D.3d 696 (2d Dep't 2012) (Graffeo, J.). The court held that the trial court did not abuse its discretion in rendering its *Sandoval* ruling. It further held that the prosecutor had improperly used Goodwine's prior statements to refresh her recollection in a manner that disclosed the contents to the jury, but the error was harmless in light of the overwhelming evidence of Jones's guilt. Jones's claim that his warrantless arrest was illegal was found to be unpreserved for appellate review, and his remaining contentions were found to be without merit. Jones's application for leave to appeal the decision to the New York Court of Appeals was denied by a judge of that court on September 28, 2012. *Id.*

C. *The Motion to Vacate Judgment*

On July 22, 2013, Jones moved to vacate his judgment pursuant to New York Criminal Procedure Law §§ 440.10 and 440.20. Jones raised five claims: (1) he was denied the affective assistance of counsel because his attorney failed to object to the submission to the jury of the lesser included charge of manslaughter on the ground that there was no reasonable view of the evidence that would support the charge; (2) the trial judge deprived Jones of his right to a fair trial by acting as an advocate for the prosecution; (3) the court deprived Jones of due process by relying on improper factors in imposing sentence; (4) he was denied his constitutional right to a fair trial based on the prosecutor's failure to disclose *Brady* material and by his counsel's failure to object to the alleged *Brady* violation; and (5) he was deprived of due process when the prosecution improperly impeached its own witness and effective assistance of counsel when trial counsel failed to object to that impeachment.

On October 9, 2013, the Supreme Court denied Jones's motion, finding that his claims were procedurally barred and without merit. Opinion, DE 11-2. The Second Department denied Jones's application for leave to appeal on May 5, 2014. DE 11-3.

D. *The Instant Petition for a Writ of Habeas Corpus*

Jones, proceeding *pro se*, now seeks a writ of habeas corpus on the following grounds: (1) he was deprived of his due process right to a fair trial and to the effective assistance of counsel when his trial attorney failed to file a timely notice of intent to proffer psychiatric evidence pursuant to N.Y. C.P.L. § 250.10; (2) he was deprived of a fair trial when the court allowed the prosecutor to examine a state's witness about her prior inconsistent statements; (3) he was deprived of the right to present a defense when the trial court refused to sign a subpoena for police records and photographs that could have helped to establish Jones's physical inability to commit the crime and refused to authorize a disbursement for a witness's bus fare; (4) he was deprived of his right to present a defense when the court precluded the defense from presenting evidence that Halsey had a razor in his mouth during the autopsy; (5) he was denied the effective assistance of trial counsel because counsel failed to object to the submission to the jury of manslaughter as a lesser included offense; (6) the court deprived him of due process and a fair trial by acting as an advocate for the prosecution; (7) he was denied a fair trial and the effective assistance of counsel because of the state's failure to disclose *Brady* material and because his trial counsel failed to object to the *Brady* violation; and (8) the trial court relied on improper factors in sentencing.

DISCUSSION

A.  *Standards of Review*

Under 28 U.S.C. § 2254(a), a district court can "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain habeas relief: (1) exhaustion; (2) lack of a procedural bar; and (3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996).

1.  *Exhaustion*

The exhaustion requirement, codified at 28 U.S.C. §§ 2254(b) and (c), obligates a federal habeas petitioner to exhaust state judicial remedies before seeking relief from a federal court. To exhaust state remedies, a petitioner must "fairly present" his federal constitutional claims to the highest state court with jurisdiction over them. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation marks and citations omitted); *Daye v. Att'y Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1981) (en banc) (citations omitted). This requirement, which "springs primarily from considerations of comity" between the federal and state systems, *Daye*, 696 F.2d. at 191, affords the state system "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan*, 513 U.S. at 365 (internal quotations and citation omitted).

2.  *Procedural Default*

A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of

7

the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A state law ground is "adequate" if "the state's insistence on compliance with its procedural rule serves a legitimate state interest." *Wainwright v. Sykes,* 433 U.S. 72, 83 n.8 (1977) (quoting *Henry v. Mississippi*, 379 U.S. 443, 447 (1965)). Further, a "state law ground is only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state." *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007). The "fundamental miscarriage of justice" exception has been has been construed to require a showing of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995).

   3.  *AEDPA Deference to State Court Decisions*

   Under AEDPA, a federal court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A decision on the merits is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 407.

AEDPA's deferential standard of review "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (internal quotation marks and citation omitted). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411 (2000). Rather, the court should ask whether the state court's application of federal law was objectively unreasonable. *Id*. In addition, a federal habeas court must presume all state court factual determinations to be correct; such findings are binding on habeas review unless the petitioner rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *See Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) ("When a state court [adjudicates a federal claim on the merits], a federal habeas court must defer in a manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.").

B. *Jones's Claims for Relief*

    1. *Ineffective Assistance of Counsel*

        a. *Failure to File a Timely Motion for Authorization to Retain a Medical Expert Under New York C.P.L. § 250.10*

Jones claims that he was denied effective assistance of counsel because trial counsel failed to timely file a notice of intent to offer psychiatric testimony pursuant to New York C.P.L. § 250.10, and waited too long to seek authorization to retain a medical expert to

9

support a defense of extreme emotional disturbance. Specifically, Jones contends that the medical expert may have been able to testify that Jones was suffering from post-traumatic stress because he himself had been stabbed a few days before the crime. This, in turn, the argument goes, would have allowed him to put forth a defense of extreme emotional disturbance. Although the state court did not "explicitly refer to either the federal claim or to relevant federal case law," the claim was nevertheless adjudicated on the merits when the Second Department found that the petitioner's "remaining contentions are without merit," *Jones*, 97 A.D.3d 696, and is thus subject to AEDPA's deferential standard of review. *See Sellan*, 261 F.3d at 312.

To establish ineffective assistance of counsel under the Sixth Amendment, a defendant must show (1) that the attorney's performance was deficient, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).

At the May 18, 2009 hearing, Jones's trial counsel renewed a motion for authorization to retain a medical expert[5] and made a robust argument in support of the motion. HT 3-8. The court noted the tenuous connection between the after-effects of the earlier crime against Jones and Jones's own stabbing of Halsey. Skeptical that expert testimony could support to support a defense of extreme emotional disturbance, the hearing court essentially denied the § 250.10 motion, and its decision was affirmed by the Second Department.

I conclude that the hearing court's assessment of the application was reasonable. Though there was a temporal connection between the assault of Jones and Jones's stabbing of Halsey a few days later, there were no other indicia that the two events were related in any way. Accordingly, even a more prompt motion for authorization to retain an expert would not have

---

[5] Counsel had originally made the request at a hearing on October 2, 2008.

changed the outcome. Accodringly, the state court's determination of this issue cannot be characterized as an unreasonable application of *Strickland*.

        b.      *The Failure to Object to the Lesser Included Charge of First-Degree Manslaughter and to Allege A Brady Violation*

Jones argues that he received ineffective assistance of counsel when his lawyer failed to raise a specific objection to the submission of first-degree manslaughter as a lesser included offense, and failed to object to an alleged *Brady* violation. Addressing the lesser included charge claim first, on the circumstances of this case, I cannot fathom why counsel would *not* have wanted the lesser included charge submitted to the jury. Jones was charged with murder in the second degree, a more serious charge. Trial counsel made an application to the court for the charges of criminally negligent homicide and manslaughter in the second degree. The court denied the request for a charge of criminally negligent homicide but granted the charge for manslaughter in the second degree. TT 912. The prosecution moved to include a charge of manslaughter in the first degree, which trial counsel opposed and the court granted. Jones contends that counsel was ineffective because he failed to raise a *specific* objection to the lesser included charge. In my opinion, counsel should have welcomed any charge lower than the top charge of murder in the second degree.

      In deciding whether a charge is properly a lesser included charge, the trial court must consider two factors. First, it must consider whether the offense is "of lesser grade or degree and that in all circumstances, not only in those presented in the particular case, it is impossible to commit the greater crime without concomitantly, by the same conduct, committing the lesser offense." *People v. Glover*, 57 N.Y.2d 61, 63 (1982). Second, there must be a "reasonable view of the evidence in the particular case that would support a finding that [the defendant] committed the lesser offense but not the greater." *Id*. In light of the fact that there

11

was a reasonable view of the evidence – which included Jones's own statements – that Jones intended to do serious physical harm to Mr. Halsey, but not kill him, counsel was not ineffective for failing to raise a specific objection to the charge of manslaughter in the first degree as a lesser included charge.[6] Therefore, the state court's rejection of this claim was not an unreasonable application of *Strickland*.

Turning to the alleged *Brady* violation, there is no violation where the photographs in question documented an incident that Jones had knowledge of, specifically, his own injuries. The *Brady* doctrine requires prosecutors to turn over material exculpatory to defendants but does not require prosecutors to supply a defendant with evidence when the defendant knew of, or should reasonably have known of, the evidence and its exculpatory nature. *People v. Doshi*, 93 N.Y.2d 499, 506 (1999) (citing *United States v. Leroy*, 687 F.2d 610, 618 (2d Cir. 1982). Jones was in exactly such a position. Even if the photographs did exist, Jones was well aware of the facts underlying his beating, and was likely aware that police had taken the photographs at the time. Because the photographs in question do not constitute *Brady* material, Jones cannot support a claim that he was denied effective assistance of counsel for counsel's failure to object to the alleged *Brady* violation.[7]

Moreover, in the circumstances of this case, I conclude the photographs were not even exculpatory. Under *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution has an obligation to disclose evidence in its possession that is favorable to the defendant and material. *See id.* at 87. Evidence is material for *Brady* purposes "only if there is a reasonable probability

---

[6] Manslaughter in the first degree requires "intent to cause serious physical injury to another person." N.Y. Penal Law § 125.20. Murder in the second degree, on the other hand, requires "intent to cause the death of another person." N.Y. Penal Law § 125.25.

[7] Because the Court finds the claims of ineffective assistance of counsel for failure to object to the lesser included charge and to the *Brady* violation without merit, it does not need to address the State's alternative argument that the claims were procedurally barred.

12

that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Persico*, 645 F.3d 85, 111 (2d Cir.2011) (quoting *Strickler v. Greene,* 527 U.S. 263, 280 (1999)) (internal quotation marks and citations omitted). For the reasons discussed below with respect to Jones's claim that he was denied his right to present a defense, the photographs of his injuries would not have made a meaningful difference to the defense at trial. At no time did defense assert that Jones's injuries from being assaulted days prior to the murder impair his physical ability to stab Halsey through the heart.

2. *The Prosecutor's Impeachment of a Latrice Goodwine*

Jones contends that he was deprived of his right to a fair trial when the prosecutor, in an effort to refresh Latrice Goodwine's recollection for impeachment purposes, disclosed the contents of her prior written statement (and grand jury testimony) to the jury. Goodwine, a state's witness, testified at trial that she had not seen Jones with anything in his hand on the night of the stabbing. The court allowed the prosecutor to impeach her by asking her if copies of her written statement and grand jury testimony refreshed her recollection. The Second Department held that the prosecutor's conduct was improper because it revealed the contents of the statements (specifically, that Goodwine stated that she had seen Jones with a knife) to the jury, but the error was harmless because there was overwhelming evidence of Jones's guilt and "no significant probability that the error had contributed to his conviction." *Jones*, 97 A.D. at 697.

This claim fails because it does not raise a federal issue on which habeas relief may be granted. Jones contended in state court that the prosecutor's conduct violated New York Criminal Procedure Law § 60.35, which limits the circumstances in which a prosecutor may properly impeach his or her own witness. I have reviewed the testimony at issue (*see* TT 616-24), and in federal court the prosecutor would have been entitled to conduct a full cross-

13

examination based on Goodwine's prior written statement and grand jury testimony without raising either an evidentiary issue or a Confrontation Clause issue.

    3.    *The Right to Present a Defense*

Jones contends that he was deprived of the right to present a defense when the trial court (1) refused to sign a subpoena for police records and photographs that could allegedly have helped to establish Jones's physical inability to commit the crime and refused to authorize a disbursement for a witness's bus fare, and (2) precluded the defense from presenting evidence that Halsey had a razor in his mouth during the autopsy. The Appellate Division rejected these claims on the merits when Jones raised them on direct appeal.

I have reviewed the relevant portions of the trial transcript and they reveal no error by the trial court. In his opening statement, defense counsel told the jury that the stabbing of Halsey, which occurred after a lot of drinking, was an "unfortunate thing" that was "not an intentional murder as the prosecutor wants you to believe." TT 352. Though Jones's fear of the "Crips" who had assaulted him days earlier was mentioned by counsel ("he was worried about the Crips coming back to get him"), there was no suggestion in the defense at trial that the assault had disabled Jones in a manner that precluded him from stabbing Halsey. *See id.* at 350-54.

At the end of that same day, the issue of bus fare for an out-of-state witness, Shauntay Jones, arose.[8] After defense counsel said the witness would testify about Jones's physical condition on the day before the stabbing (TT 393-95), the court asked, "Are you trying to say he was physically incapable of doing anything?" *Id.* at 395. After conferring with Jones, defense counsel reiterated that Jones was not denying that he had stabbed Halsey, but rather was

---

[8] The colloquy described here occurred approximately 40 pages after defense counsel's opening statement.

14

claiming that he could not have "run" into the kitchen to get the knife. *Id.* at 395. The trial court was unpersuaded that such a contention warranted the additional expense of bringing in the witness – an assessment I agree with – and invited defense counsel to use the upcoming weekend to fashion further arguments if he wished to. *Id.* at 396; *see also id.* at 736-37 (rejecting the same request upon renewal on the ground that testimony about Jones's physical condition in between the assault of him and the stabbing of Halsey would be cumulative). I see no error, let alone unreasonableness, in the state court's resolution of this issue.

The prosecutor moved to preclude Jones from inquiring into the curious fact that a razor blade was found in Halsey's mouth during his autopsy. Defense counsel argued that the razor blade could possibly explain to the jury why Halsey was moving toward Jones while he was holding a knife. It appears from the record that because trial counsel neither mentioned nor elicited any other evidence of self-defense, and was not seeking a self-defense charge, the trial court precluded the questioning.

Erroneous evidentiary rulings by a state trial court generally do not rise to the level of constitutional violations upon which a federal court may issue a writ of habeas corpus. *See Jenkins v. Bara*, 663 F. Supp. 891, 899 (E.D.N.Y. 1987) (citing *Lipinski v. New York*, 557 F.2d 289, 292 (2d Cir. 1977)). Erroneously excluded evidence warrants habeas relief only if the omission deprived the petitioner of a fundamentally fair trial. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Taylor v. Curry*, 708 F.2d. 886, 891 (2d Cir. 1983). The test for determining whether erroneous evidentiary rulings denied the defendant a fair trial centers on whether the excluded evidence would have created "a reasonable doubt that did not otherwise exist." *United States v. Agurs*, 427 U.S. 97, 112 (1976). Erroneously admitted evidence must be "crucial, critical, [and] highly significant." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985). In this regard, petitioner

15

bears a "heavy burden." *Roberts v. Scully*, 875 F. Supp. 182, 189 (S.D.N.Y. 1993), *aff'd*, 71 F.3d 406 (2d Cir. 1995) (unpublished table decision). However, the Due Process Clause of the Fourteenth Amendment is violated where "the evidence in question 'was sufficiently material to provide the basis for conviction or to remove reasonable doubt that would have existed on the record without it.'" *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (quoting *Collins*, 755 F.2d at 19); *see also Wade v. Mantello*, 333 F.3d 51 (2d Cir. 2003).

In light of the absence of any evidence or argument that Jones had acted in self-defense, the odd fact that a razor blade was found in the victim's mouth during the autopsy would not have created a reasonable doubt. Accordingly, the state court's rejection of this claim was not an unreasonable application of federal law.

4. *The Claim of Judicial Bias*

Jones contends that he was denied a fair trial when the trial court "prompted the [P]eople to recall [a] witness solely for the purpose of having the petitioner['s] written statement read to the jury which strengthen[ed] the [P]eople's case." Pet. Br. 24-25. This claim is without merit because the written statements had already been admitted into evidence. Even if the prosecutor read it into the record at the judge's prompting, there's no impropriety in ensuring that the jury knew precisely what statement were made. Because the claim is without merit, I need not address respondent's alternative argument that the claim is procedurally barred.

5. *The Sentencing*

Jones argues that the sentencing court relied on improper facts when imposing his sentence. The record does not support this claim. First, defense counsel took issue with several statements contained in the presentence report. ST 2. In response, the court noted that it would consider only "the facts and circumstances of this case." *Id.* at 7. The prosecutor then cited to

Jones's criminal history and history of violence, and stated that Jones had been "pimping" two of the witnesses. *Id.* at 14. After defense counsel took issue with these statements, the court indicated that it would consider only the facts of "this case" and Jones's record. *Id.* at 28. Because the court did not consider improper factors in sentencing Jones, his claim is without merit.[9]

## CONCLUSION

I have reviewed all of Jones's claims and concluded that they have no merit. The petition is denied. Because Jones has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S. District Judge

Dated: Brooklyn, New York
October 8, 2015

---

[9] Even if the court had considered the information Jones disputes, it is not clear to me that this is a claim on which habeas relief can properly be granted. Under 18 U.S.C. § 3661, there is no limit on the information a sentencing court may consider in imposing an appropriate sentence. Thus, there would be no federal defect in considering the disputed information.